LOUIS N. HARTOG, Appellant, v. PIANO & KLINE, INC., Respondent.

80

(Submitted October 7, 1932; decided October 18, 1932.)

*Charles Pickett, Milton S. Schnur* and *Thomas A. McGrath* for appellant. The lease required defendant to pay all saving in insurance resulting from the installation of the sprinkler system, whether the property insured was owned by defendant or by Piano. (*Mitchell, Inc.,* v. *Dannemann Hosiery Mills,* 258 N. Y. 22; *Gillett* v. *Bank of America,* 160 N. Y. 549.) The insurance on Piano's property was for defendant's benefit and defendant is, therefore, liable for the entire reduction in insurance. (*Claflin* v. *Meyer,* 75 N. Y. 260.) In any event the burden was on defendant to establish how much of the property involved belonged to it and how much to Piano and as defendant failed to meet this burden, plaintiff was entitled to recover the reduction in insurance on all of the property insured. (*Meinhard* v. *Salmon,* 223 App. Div. 663; 249 N. Y. 458; *Samson* v. *Rose,* 65 N. Y. 411; *Starr* v. *Winnigar,* 3 Hun, 491; *Matter of Bentley,* 139 Misc. Rep. 759.)

*Max Shlivek* and *Saul S. Brin* for respondent. The verdict was properly directed for the defendant inasmuch as the plaintiff failed to submit proof from which could be computed with a sufficient degree of certainty the

amount defendant saved by the sprinkler installation. (*Broadway Photoplay* v. *World Film Corp.*, 225 N. Y. 104; *Thilemann* v. *Mayor of New York*, 66 App. Div. 455; *French* v. *French*, 125 N. Y. Supp. 1099; *Strauss* v. *Hoch*, 162 App. Div. 569; *Noble* v. *American Three Color Co.*, 37 Misc. Rep. 96; *Willard Co.* v. *City of New York*, 142 N. Y. Supp. 11.)

CRANE, J. Piano & Kline, Inc., was organized prior to the times here in question with a capital stock of $10,000. The shares of stock were equally divided between Angelo Piano and E. Kline, who had previously been partners in the woodworking business carried on by them and subsequently by the corporation. Piano was president and Kline treasurer. Some time after the making of the lease here in question, Kline sold his interest to Piano, who became the sole owner of the corporation.

The business was carried on in a loft at 362 Second avenue, New York city, held under a lease made the 29th day of May, 1922, between the plaintiff, Louis N. Hartog, and Piano & Kline, Inc. The lease was for one year but was continued without written renewal from year to year until the spring of 1926. The rent was reserved in the following words: "An annual rental of Forty-two hundred dollars and any decrease in insurance from present rate, that may be saved on account of installing sprinkler system."

This action has been brought to recover the reduction in the insurance premiums which the defendant had to pay because of the sprinkler system thereafter installed by the landlord. The meaning of the lease and the terms of the conditions are not in dispute. The rental value of the loft was increased by reason of the installation of a sprinkler system. The insurance on merchandise and personal property of the tenant would not be so high. The corporation would save considerable on

insurance premiums with such an installation. Therefore, the parties provided that if the landlord went to the expense of installing the sprinkler system his tenant would pay the increased value of the leasehold, measured by the reduction in the insurance rates. It was conceded upon the trial, in fact stipulated in writing, that the reduction in the insurance rates, as shown by plaintiff's exhibit, was due to the installation of a sprinkler system. The amount of this saving or reduction, figured in dollars and cents, was $1,335.31. The president upon demand promised to pay the additional rent caused by these facts.

The policies of insurance issued to the defendant were payable to Piano & Kline, Inc., and/or Angelo Piano (A. I. M. A..). The lease covered the entire loft occupied by the defendant Piano & Kline, Inc. The rent reserved of $4,200 was presumably the rental value of the premises before the installation of the sprinkler system. The increase to be paid after the installation likewise was to be the increase in rental value because of the installation. This, the defendant undertook to pay. The amount of the increase was to be measured by " any decrease in insurance from present rate, that may be saved on account of installing sprinkler system." By stipulation of the parties there was a reduction in insurance rates which was due to the installation of the sprinkler system and the amount saved in insurance on the policies issued to the defendant was $1,335.31. Whether the merchandise insured by the defendant and covered by these policies was the property of the defendant or its customers or held on bailment as an accommodation to others, or was the personal property of its president is entirely immaterial. The amount of insurance saved to the defendant by reason of the reduction in insurance rates on its policies due to the cause stated, was the amount payable to the plaintiff as increased rent.

Further there is no sufficient evidence that there was

any property in the loft insured by the defendant except its own property.

Angelo Piano, the president and sole owner of the business or, to be exact, the stock of the corporation, testified that everything in the place belonged to Piano & Kline, Inc. " Q. And that consisted of all the machinery you did business with? A. That is it. Q. And whatever stock you had, had it not? A. Yes. Q. And that changed from time to time? A. Yes. Q. And you insured that then, didn't you? A. We insured it for whatever we could. Q. Afterwards, you insured it, and how long did you carry the insurance on that goods, on that same stock and goods that was turned over? A. There was always an insurance there on part of it. Q. Always insurance, and down to what date? Continued on to when? 1925? A. Well, you have the policy there, and you can tell much better than I can. Q. And those policies you gave me cover this goods of Piano & Kline, is that so? A. Yes."

On cross-examination by his own counsel, Piano gave this answer: " Q. What else did those policies cover? A. It covered my own property."

Because of this answer, the complaint of the plaintiff has been dismissed, the trial justice in his opinion stating: " * * * The amount of the property of the defendant covered by such insurance was not shown nor was there any evidence indicating that the insurance on the property of Piano was for the benefit of defendant or that it was liable for the premiums thereon."

When we recall that Piano owned all the stock of defendant, he was justified from his standpoint in stating that the policies covered his property, but whether this be so or not, the plaintiff was in no position to know what the policies covered except as stated therein. This was a matter between the defendant and the insurance companies. Piano & Kline's agreement with the plaintiff was to pay to him as rent the amount which it saved on insurance because of the installation of the sprinkler

system. If any of the insurance premiums which were thus saved would have been paid by Angelo Piano personally and not by the defendant because of insurance on his own property, the burden rested upon the defendant to show it. This it failed to do. The plaintiff proved his cause of action and his complaint was improperly dismissed.

The judgments below should be reversed and judgment ordered for the plaintiff for $1,335.31 and interest, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.